UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMES E. LEWIS, JR., 10076-055,

                              Petitioner,

                                                                DECISION AND ORDER
            -v-                                                  99-CR-6090 CJS
                                                                      03-CV-6415

UNITED STATES OF AMERICA,

                              Respondent.
_____

## INTRODUCTION

Now before the Court is the *pro se* petitioner's application to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the application is denied.

## 28 U.S.C. § 2255

Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. The Court may dismiss a section 2255 petition without conducting a hearing if the petition and the record "conclusively show" that petitioner is not entitled to relief. *Id*. As will be seen below, petitioner's arguments and submissions do not merit an evidentiary hearing.

BACKGROUND

The background facts of this case are accurately set forth in Respondent's brief (Document [#289]) and in the decision by the Second Circuit Court of Appeals in *U.S. v. Lewis*, No. 01-1494, 45 Fed. Appx. 28, 2002 WL 2009352 (2d Cir. Sep. 3, 2002). For purposes of the instant application, it is sufficient to note the following facts.

Between October 1996 and April 5, 1997, Petitioner was living "on the streets of Rochester," New York. (Trial Transcript [#218] at 5). On April 5, 1997, Petitioner, who was then age sixteen, was arrested and charged, in Monroe County Court, State of New York, with Robbery in the Second Degree, Assault in the Second Degree, and Larceny in the Fourth Degree.[1] Petitioner was convicted and sentenced to one year in jail. Petitioner remained in the Monroe County Jail until December 1997.

Upon being released from the Monroe County Jail, Petitioner went to live in Jamestown, New York. Specifically, Petitioner stayed in a residence at 419 Lincoln Street in Jamestown, along with Benjamin Shury ("Shury") and a man named Omar. (Trial Transcript [#218] at 33-34). On March 25, 1998, Petitioner was arrested, along with Shury and Omar, and charged with Criminal Possession of a Controlled Substance in the Third Degree. At trial in the instant case, Petitioner admitted that Shury and Omar were selling crack cocaine, but denied that he was involved. (*Id*. at 34). Nevertheless, Petitioner pled guilty to Criminal Possession of a Controlled Substance (crack cocaine) in the Seventh

---

[1] Petitioner and his co-defendant, Alfred Martin ("Martin"), were accused of beating a woman who owed a drug debt to Martin. Petitioner knew martin from "hanging around" on the streets of Rochester, but he denies that Martin was a drug dealer. (Trial Transcript [#218] at 20). Petitioner admitted that Martin enlisted his help in attacking the woman, and that he kicked the woman in the face while Martin was beating her, but he denied any knowledge of a drug debt. (Trial Transcript [#218] at 32).

Degree, and was sentenced to one year in jail. Petitioner was released from the Chautauqua County Jail on February 1, 1999. Upon being released from jail, Petitioner was picked up by Shury and Tracy Roach ("Roach"), in Roach's car. (*Id*. at 37). Petitioner returned to Jamestown and remained there until September 1999. In Jamestown, Petitioner rented an apartment, at 458½ Allen Street, using Roach's name on the lease.

On April 8, 1999, Petitioner sold crack cocaine to an undercover officer at 21 Van Buren Street in Jamestown, but was not immediately arrested. In July 1999, Jamestown Police Officer David Mitchell ("Mitchell") filed an accusatory instrument in Jamestown City Court against Petitioner, charging him with Criminal Sale of a Controlled Substance in the Third Degree. On September 15, 1999, Mitchell approached Petitioner about cooperating in a drug investigation. That evening, Petitioner arranged a meeting with Mitchell. However, when Mitchell arrived, Petitioner ambushed him, shooting him in the face. Petitioner also attempted to shoot Mitchell's partner, Police Officer Scott DePietro ("DePietro").

On September 16, 1999, Petitioner was charged, in Chautauqua County Court, with crimes including the attempted murder of Mitchell and DePietro. On August 30, 2000, Petitioner was convicted of Attempted Murder in the First Degree, Aggravated Assault, Attempted Aggravated Assault, and Criminal Use of a Firearm in the First Degree, and received an aggregate indeterminate sentence of fifty years to life in prison.

On August 10, 2000, in this Court, Petitioner, along with Roach, Shury, and other defendants, was charged in a Second Superseding Indictment, with conspiracy to distribute and possess with intent to distribute marijuana and 50 grams or more of cocaine base, between March 1996 and September 1999 (Count 1). Petitioner was also charged with

distribution of cocaine base on or about April 8, 1999, in Jamestown, New York (Count 8), distribution of cocaine base on or about April 14, 1999, in Jamestown (Count 9), and possession, use and discharge of a firearm in connection with a drug trafficking crime (Count 10), in violation of 21 United States Code ("USC"), § § 846 and 841(a)(1), and in violation of 18 USC § 924(c)(1).  Petitioner was represented at trial and on appeal by Christopher Ciaccio, Esq. ("Ciaccio").

Prior to trial, Ciaccio filed an omnibus motion, which included a motion "to suppress evidence seized upon execution of a search warrant at 419 Lincoln Street, Jamestown, New York," on March 25, 1999. (Omnibus Motion [#45] ¶ ¶  24, 28).  In that regard, Petitioner alleged that "the warrant was issued without evidence of probable cause; and/or the informant information upon which the warrant was based was known to be unreliable." (*Id*. ¶ 25). The application further stated: "However, Defendant has not been provided a copy of the search warrant application, so it is impossible at this juncture to show the court facts supporting the allegations." (*Id*. ¶ 26).  Petitioner also alleged that the seizure resulted in his arrest and eventual guilty plea "to a misdemeanor possession charge," and that the use of the seized evidence in the underlying prosecution would result in double jeopardy.  In opposition to the motion, the Government argued that Petitioner had not made any factual allegations establishing either a legitimate expectation of privacy in the location of the search or a property or possessory interest in the property seized. (Response [#47] at 14).  The Government further maintained that there was probable cause for the granting of the warrant, and that the police had relied in good faith on the warrant. (*Id*. at 15).  On April 18, 2000, during argument of the omnibus motion, Ciaccio withdrew the motion to suppress evidence. (Minute Entry dated 4/18/2000).

At trial, the Government presented proof that Petitioner sold crack cocaine for Roach in Jamestown, during the periods charged in the indictment. In that regard, Ryan Smith ("Smith"), an un-indicted co-conspirator, testified that he moved to Rochester from New York City, where he had known Roach. Smith indicated that, in or about 1997, he was selling crack cocaine from a drug house on South Avenue in Rochester, and that when Petitioner was released from jail in December 1997, he began selling crack cocaine from Smith's drug house.[2] Smith further testified that in or about the Spring of 1998, he and Roach agreed that he would send one of his employees to sell drugs from one of Roach's drug houses in Jamestown.[3] Smith stated that Petitioner went to Jamestown for that purpose, with crack cocaine provided by Smith, and that Petitioner returned with sales proceeds of approximately four thousand dollars.[4] According to Smith, Petitioner told him that in Jamestown, he had been selling crack cocaine from one of Roach's drug houses.[5] Smith testified that he provided Petitioner with additional crack cocaine to sell, and that Petitioner returned to Jamestown for that purpose.[6] Moreover, Smith indicated that, in the Spring of 1998, Roach told him that Petitioner had been arrested in Jamestown.[7] Smith further testified that, in early 1999, when Petitioner was released from jail, he saw

---

[2] Excerpt of Trial Transcript [#180] at 10, 12-14.

[3] Id. at 15-17.

[4] Id. at 20.

[5] Id. at 23.

[6] Id. at 22-23.

[7] Id. at 24.

Petitioner in Roach's apartment in Rochester.[8] According to Smith, in the Summer of 1999, Roach told Smith that Petitioner was back in Jamestown, selling drugs for him.[9] Another un-indicted co-conspirator who testified at trial was Diane Darling ("Darling"), Roach's girlfriend. Darling testified that she and Roach lived together in an apartment in Jamestown from approximately September 1997 to April 1998.[10] Darling stated that in or about February 1998, Roach introduced her to Petitioner in Rochester, and that sometime later that month, she saw Petitioner in Jamestown, selling crack cocaine from one of Roach's locations in "an apartment on the 400 block of Lincoln Street."[11] Darling stated that Petitioner, Omar, and others were present in the apartment.[12] Darling also testified that on two occasions during the same period, Petitioner gave her drug sale proceeds to deliver to Roach.[13] Darling indicated that on one occasion, she went to the Lincoln Street apartment and picked up money from Omar to deliver to Roach.[14]

In response to Ciaccio's hearsay objections to the testimony of Smith and Darling, the Court observed:

> As far as the objections as to some of what ostensibly are out of Court statements, this Court has determined based on the evidence that the government has established by a preponderance of evidence that the

---

[8] Id. at 29.

[9] Id. at 31.

[10] Excerpt of Trial Transcript [#178] at 6.

[11] Excerpt of Trial Transcript [#178] at 18-20.

[12] Id. at 20.

[13] Id. at 21, 24.

[14] Id. at 23.

> conspiracy charged in the indictment existed. Having done that, the evidence linking another individual; or specifically, James Lewis or any one else who's a co-conspirator, allegedly a co-conspirator, need not be overwhelming. The Court has found there is sufficient evidence linking James Lewis at this point with the conspiracy charged in the indictment, and the Court has allowed in any what might arguably be hearsay statements made by others as an exception to the hearsay rule, because the Court has found that the statements were made by individuals for whom there is sufficient evidence linking him to the conspiracy and such statements were made in furtherance of the conspiracy – just so the record is clear on the Court's rulings.

(Excerpt of Trial Transcript [#180] at 37-38).

Petitioner testified at trial, and admitted selling crack cocaine in Jamestown. (Trial Transcript [#218] at 9, 30).[15] However, he denied conspiring with the other defendants. Petitioner denied conspiring with Roach, but admitted that he knew Roach, and that his cousin and Roach had both fathered children with the same woman. (Trial Transcript [#218] at 11). Petitioner also admitted that while living in Jamestown, he had rented an apartment using Roach's name, but claimed that he had done so without Roach's knowledge. (Trial Transcript [#218] at 11-12). Petitioner denied knowing Smith, but stated that he had seen Smith with Martin in Rochester, at the apartment of Tosha Maxwell ("Maxwell"), the mother of one of Roach's children. (Trial Transcript [#218] at 20-21, 36). Petitioner admitted that he knew Darling, and that he used to hang out at her house in Jamestown. (Trial Transcript [#218] at 22). However, Petitioner stated that he did not know that Darling was Roach's girlfriend. (Trial Transcript [#218] at 22). Petitioner claimed, in fact, that he had never seen Roach in Jamestown. (*Id*. at 45). Petitioner admitted that he

---

[15]Although Petitioner admitted to selling crack in Jamestown generally, at trial when asked specifically if he had sold drugs on April 8, 1999, at 21 VanBuren Street in Jamestown, Petitioner answered, "I don't believe so." (Excerpt of Trial Transcript [#218] at 26-27).

was carrying a gun when he went to meet Mitchell, but said that he could not remember firing the weapon. (*Id*. at 50-51). Petitioner indicated that he might have shot Mitchell because he was having "emotional problems at the moment," but also stated that he had no memory of the shooting. (Trial Transcript [#218] at 24, 29).

Roach did not testify at Petitioner's trial. However, on January 26, 2001, Roach and the Government entered into a plea agreement, pursuant to which Roach admitted, that between March 1996 and September 1999, he distributed crack cocaine and marijuana , along with Petitioner, Smith, Martin, and others,

The jury convicted Petitioner of Counts 1, 8 and 10 of the Second Superseding Indictment. On August 24, 2001, the undersigned sentenced Petitioner to, *inter alia*, a sentence of 405 months imprisonment on Count One and 240 months imprisonment on Count Eight, to run concurrently to each other and consecutively to his state sentence, and 120 months on Count Ten, to be served consecutively to all other sentences of imprisonment.

Petitioner, still represented by Ciaccio, filed an appeal. On appeal, Petitioner raised three issues: 1) the District Court erred by imposing a prison sentence that was entirely consecutive to the previously-imposed state-court sentence; 2) the District Court erred when it denied Petitioner's motion to dismiss the indictment on the grounds of double jeopardy; and 3) the District Court erred when it departed upward. On September 3, 2002, the United States Court of Appeals for the Second Circuit affirmed this Court's judgment. *U.S. v. Lewis*, No. 01-1494, 45 Fed.Appx. 28, 2002 WL 2009352 (2d Cir. Sep. 3, 2002).

On August 27, 2003, Petitioner, proceeding *pro se*, filed the subject application pursuant to 28 U.S.C. § 2255. The application purports to state four separate grounds: 1)

the Court erred by allowing Smith and Darling to testify concerning statements by co-conspirators; 2) there was insufficient evidence to support the conviction for conspiracy; 3) the Court erred by not giving a jury instruction concerning multiple conspiracies; and 4) ineffective assistance of trial counsel, based on the withdrawal of the suppression motion and the failure to object to co-conspirator testimony, and ineffective assistance of appellate counsel, for filing a frivolous appeal.

The Court granted Respondent an extension of time, until December 1, 2003, to file a response. On December 1, 2003, Respondent filed opposing papers. Respondent argued, that Petitioner was procedurally barred from raising his first three claims, since he had not raised them in his direct appeal. Alternatively, Respondent argued that Petitioner's claims lacked merit. Thereafter, Petitioner sought, and was granted, numerous extensions of time to file reply papers. Ultimately, Petitioner was granted until August 31, 2007, to file a reply. On September 14, 2007, Petitioner filed a Reply (Docket [#308]). Even though the Reply was untimely, the Court has reviewed and considered Petitioner's arguments. Petitioner argues that his first three grounds are not procedurally barred, for failure to raise them on appeal, since appellate counsel was ineffective. Next, Petitioner reiterates that the testimony of Smith and Darling should not have been admitted, and was legally insufficient to support the conspiracy conviction.[16] In that regard, Petitioner contends that the Court erred by allowing Smith and Darling to testify to statements made by co-conspirators, since it did not find that Smith and Darling were part of the same conspiracy with Petitioner. (*See,*

---

[16]Petitioner also argues that Smith's testimony cannot be believed, since he indicated that he had a conversation with Roach "in the spring going towards the summer of 1998," concerning the fact that Petitioner was still in Jamestown selling drugs, when Petitioner was actually incarcerated during that period. (Petitioner's Reply [#308] at 12). However, Petitioner is misstating Smith's testimony, since Smith clearly testified that the conversation took place in 1999, not 1998. (Excerpt of trial testimony [#180] at 31-32).

*e.g.*, Petitioner's Reply [#308] at 16-17) ("The District Court never stated during its Federal Rules of Evidence, Rule 801(d)(2)(e) ruling that the declarant, specifically alleged co-conspirators Diane Darling and Ryan Smith, were found by a preponderance of the evidence to be linked, or members of the conspiracy charged in the indictment with petitioner." [sic] ). Petitioner further contends that the Court should have given a jury instruction concerning multiple conspiracies, since the testimony by Smith and Darling concerned other conspiracies, and could have had a prejudicial "spillover" effect on the jury. (*Id*. at 22). Petitioner also alleges that counsel was ineffective for failing to object to certain aspects of the Court's sentence calculation. (*Id*. at 25-26).

## ANALYSIS

The Court will first consider Petitioner's challenge to the sufficiency of the evidence supporting his conspiracy conviction. The legal principles applicable to such a claim are well settled:

> A defendant challenging the sufficiency of the evidence that was the basis of his conviction at trial "bears a heavy burden." *United States v. Parkes*, 497 F.3d 220, 225 (2d Cir.2007) (internal quotation marks omitted), *cert. denied*, --- U.S. ----, 128 S.Ct. 1320, 170 L.Ed.2d 133 (2008). On such a challenge, "we view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." *Id*. We will sustain the jury's verdict "so long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (internal quotation marks omitted).

*U.S. v. Iodice*, 525 F.3d 179, 182 (2d Cir. 2008) (footnote omitted). In the instant case, the totality of the trial evidence clearly established the existence of the charged conspiracy. Moreover, "[o]nce the prosecution proves a charged conspiracy, the evidence necessary

to link a particular defendant to the scheme need not be overwhelming and may be circumstantial in nature. Indeed, the element of knowledge, whether in connection with a conspiracy or substantive charge, often can be proved only by circumstantial evidence." *U.S. v. Gaskin*, 364 F.3d 438, 460-461 (2d Cir. 2004) (citations omitted). Here, the testimony of Smith and Darling provided more than sufficient evidence linking Petitioner to the conspiracy.

Petitioner maintains, though, that the Court erred by allowing Smith and Darling to testify concerning hearsay statements by co-conspirators. The Court allowed the testimony under Federal Rule of Evidence 801(d)(2)(E), "which excludes from the definition of hearsay statements made by a co-conspirator during the course, and in furtherance, of a conspiracy." *U.S. v. Tellier*, 83 F.3d 578, 580 (2d Cir. 1996), *cert. denied*, 519 U.S. 955 (1996). More specifically,

> [e]xtra-judicial statements by co-conspirators may be admitted if the government establishes by a preponderance of the evidence that there was a conspiracy, that both the declarant and the party against whom the statements are offered were members of the conspiracy, and that the statements were made during and in furtherance of the conspiracy. In making these preliminary factual determinations under Federal Rule of Evidence 104(a), the court may consider the hearsay statements themselves. However, these hearsay statements are presumptively unreliable,and, for such statements to be admissible, there must be some independent corroborating evidence of the defendant's participation in the conspiracy.

*Id*. (Citations omitted). Here, although Petitioner complains that testimony by Smith and Darling should not have been allowed under the co-conspirator hearsay exception, he misunderstands the rule. In that regard, he states: "The District Court never stated during its Federal Rules of Evidence, Rule 801(d)(2)(e), ruling that the declarant, specifically alleged co-conspirators Diane Darling and Ryan Smith, were found by a preponderance of

the evidence to be linked, or members of the conspiracy charged in the indictment with the petitioner." (Petitioner's Reply at 16); (*see also, Id*. at 17: "[T]here was not even a scintilla of proof produced by the government during petitioner's trial of the declarants (Ryan Smith and Diane Darling) for the court to even assess their participation in any conspiracy, let alone, the one charged in the indictment."). However, to the extent that Smith and Darling testified concerning out-of-court statements by individuals such as Roach, neither Smith or Darling was the "declarant" described in the hearsay exception. Rather, the declarant was the out-of-court declarant, e.g., Roach. As for the testimony that was admitted under Rule 801(d)(2)(E), the government established, by a preponderance of the evidence, that there was a conspiracy, that both the declarant and Petitioner were members of the conspiracy, and that the statements were made during and in furtherance of the conspiracy. Additionally, the government provided independent corroborating evidence of Petitioner's participation in the conspiracy. Accordingly, Petitioner's argument on this point lacks merit.

Petitioner also contends that the Court erred by failing to give a jury instruction concerning multiple conspiracies.[17] At the outset, since Petitioner was the sole defendant at trial, he was not entitled to multiple-conspiracies charge. *U.S. v. Galtieri*, No. SS 88 Cr. 891, 92 Civ. 2087 (KTD), 1992 WL 245499 at *3 (S.D.N.Y. Sep. 17, 1992) ("A defendant who stands trial alone is not entitled to a charge on multiple conspiracies.") (*citing U.S. v. Corey*, 566 F.2d 429, 431, n.3 (2d Cir. 1977) and *U.S. v. Sir Kue Chin*, 534 F.2d 1032, 1035 (2d Cir. 1976)), *aff'd*, 999 F.2d 537 (2d Cir. 1993), *cert. denied*, 510 U.S. 1122 (1994). Moreover, "[t]o obtain a reversal, a defendant must show both the likelihood of multiple

---

[17]During the charge conference, the Court denied defense counsel's request for such an instruction, but permitted him to make the argument to the jury.

conspiracies having existed, and substantial prejudice resulting from the failure to give the requested charge." *U.S. v. Medina*, 944 F.2d 60, 65 (2d Cir. 1991), *cert. denied*, 503 U.S. 949 (1992). Even assuming, *arguendo*, that Petitioner had shown the likelihood that multiple conspiracies existed, he did not suffer substantial prejudice, since there was "overwhelming evidence indicating [Petitioner's] participation in the charged conspiracy." *Id*. (Citation omitted).

The Court will now consider Petitioner's claim of ineffective assistance of counsel. To prevail on such a claim, petitioner must establish two elements:

> First, he must demonstrate that his attorney's performance 'fell below an objective standard of reasonableness' under the 'prevailing professional norms.' *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, he must show a 'reasonable probability' that absent counsel's error, the outcome of the proceeding would have been different. *Id*. at 687-88.

*Vadas v. U.S.*, 527 F.3d 16, 20 (2d Cir. 2007) (footnote omitted). When applying the first *Strickland* prong, courts must be

> mindful of the diversity of the bar and the variety of approaches effective attorneys might employ when dealing with a particular set of facts. To give appropriate deference to counsel's independent decisionmaking, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Another familiar risk is that, in the illuminating light of hindsight, we might look back and project ex post knowledge of consequences on the attorney's ex ante selection of one path among the many available to him. To counteract this inclination to evaluate counsel's performance against insight gained only through the passage of time, *Strickland* requires that "[w]hen assessing whether or not counsel's performance 'fell below an objective standard of reasonableness ... under prevailing professional norms,' " we must "consider the circumstances counsel faced at the time of the relevant conduct and ... evaluate the conduct from counsel's point of view." [*Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005) (*quoting Strickland*, 466 U.S. at 688-89, 104 S.Ct. 2052) (first ellipsis in original).

*Parisi v. U.S.*, 529 F.3d 134, 141 (2d Cir. 2008). With regard to alleged ineffective assistance of appellate counsel, it is well settled that,

> [i]n attempting to demonstrate that appellate counsel's failure to raise a . . . claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made. *See Jones v. Barnes*, 463 U.S. 745, 754, 103 S.Ct. 3308, 3314, 77 L.Ed.2d 987 (1983). However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker. As the Seventh Circuit has held: 'When a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.' *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1985).

*Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (some citations omitted).

In this case, none of Petitioner's ineffective assistance claims have merit. For example, Petitioner contends that Ciaccio was ineffective because he "withdrew suppression motions which may have been granted." (Petition at 6). In that regard, Petitioner refers to the motion to suppress evidence seized from 419 Lincoln Street in Jamestown, on March 25, 1999. However, Petitioner offers no basis for claiming that the motion might have been successful. As discussed above, when Ciaccio moved to suppress, he had not yet been provided with the search warrant application. Presumably, Ciaccio withdrew the application after being provided with the search warrant application. Moreover, Petitioner had already pled guilty to the charges arising from that search. As discussed above, the Court must give appropriate deference to counsel's independent decision making, and indulge a strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance. Since Petitioner has not provided any reason to believe that the suppression motion would have been successful, he has not shown that Ciaccio was ineffective. *See, U.S. v. Tisdale*, 195 F.3d 70, 73-74 (2d Cir. 1999) ("Trial counsel's failure to bring a meritless suppression motion cannot constitute ineffective assistance.") (citation omitted). Similarly, although Petitioner vaguely alleges that Ciaccio "didn't object to the government witnesses" (Petition at 6), the transcript indicates that Ciaccio made appropriate objections throughout the trial. Petitioner also alleges, in conclusory fashion, that Ciaccio filed a "frivolous appeal in which he knew the issues raised had no merit." (Petition at 6). However, Petitioner has not shown that Ciaccio failed to raise significant and obvious issues, or that such issues were clearly stronger than those contained in the appeal.[18]

Although, in his Reply brief, Petitioner attempts to raise additional ineffective assistance claims, these also lack merit. For example, Petitioner contends that Ciaccio was ineffective for failing to oppose, at sentencing, an enhancement for obstruction of justice (perjury), under § 3C1.1 of the Sentencing Guidelines. According to Petitioner, the Court applied the enhancement "without evidence offered that petitioner did display a willful attempt to obstruct justice by exercising his constitutional right to testify in his own defense." (Reply at 25). Petitioner's assertion is absurd, and in fact, this Court found by clear and convincing evidence that Petitioner "perjured himself when he testified at trial." (Sentencing Transcript [#235] at 13). In any event, Ciaccio objected to the enhancement, contrary to Petitioner's claim. (*Id.* at 5, 11). Similarly, Petitioner is mistaken in alleging that

---

[18]In his Reply, Petitioner indicates that he wanted Ciaccio to appeal based on insufficiency of evidence of conspiracy. (Reply at 19). As discussed above, such a claim lacks merit.

the Court applied an enhancement, for restraint of victim, under § 3A1.3 of the Sentencing Guidelines, to which Ciaccio failed to object. (Reply at 26). In reality, Ciaccio objected, and the Court declined to apply the enhancement. (Sentencing Transcript at 4,11).

Petitioner also contends that the Court erred by applying an enhancement under § 4A1.1(e) of the Guidelines, and that Ciaccio was ineffective for failing to object. (Reply at 26). Although Petitioner is correct that the Court applied a two-level increase to his criminal history points, pursuant to Guideline Section 4A1.1(e) (Sentencing Transcript at 32), he is incorrect in believing that such increase penalized him twice for the same crime. In that regard, he states: "The Petitioner is conten[d]ing that since the § 4A1.2(d)(2) offenses committed prior to age eighteen 2 point upward departure was already taken into account by the Guidelines. Such circumstance can not provide a proper basis for upward departure at 4A1.1(e) when petitioner had previously been subjected to an upward departure for the same crime." (Reply at 26). Petitioner received two criminal history points for his state-court convictions on November 25, 1997. The two additional criminal history points that he received under Section 4A1.1(e) were because he committed the *instant offenses* within two years of his release from imprisonment on the earlier convictions. (Sentencing Transcript [#235] at 32). Such calculation was correct, and Ciaccio had no basis to object. For all of the foregoing reasons, Petitioner's ineffective assistance claims lack merit.

CONCLUSION

Petitioner's application is denied, and this action is dismissed. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Petitioner has not made a substantial showing of the denial of a constitutional right.

SO ORDERED.

Dated: March 11, 2009
       Rochester, New York

                                            /s/ Charles J. Siragusa
                                            CHARLES J. SIRAGUSA
                                            United States District Judge